the taxing act, completed the change of domicile once intended, and this because of his failure to establish a residence in Vermont or to reside at the house in which he had once intended to live at Grand Isle. I will therefore find that the former domicile of decedent continued, and that decedent at the time of his death had his domicile in New York, and not in Vermont.

The appraiser will proceed with the appraisal of the estate in accordance with this finding.

---

## In re WOLF.

### (Surrogate's Court, New York County. December 21, 1914.)

DESCENT AND DISTRIBUTION (§ 63*)— RIGHTS OF HUSBAND—EFFECT OF KILLING WIFE.

A husband, who unintentionally kills his wife in endeavoring to shoot her paramour with whom she had eloped, is not barred in law or equity from taking a distributive share in her estate, pursuant to Decedent Estate Law (Consol. Laws, c. 13) § 100.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 190–193; Dec. Dig. § 63.*]

In the matter of the judicial settlement of the account of Mary Wolf, administratrix of the estate of Katie Fox, also known as Catherine Fuchs, deceased. On objections by the guardian of the children of deceased, to George Fuchs, the husband and father, taking under the statute of distributions. Decree ordered to be settled in his favor.

Gustave Frey, of New York City, for administratrix.
Leonard McGee, of New York City, for George Fuchs.
Henry K. Heyman, of New York City, special guardian.

FOWLER, S. The special guardian of the infant children of Catherine Fuchs, deceased, objects that George Fuchs, the husband of the deceased and the father of the infants, is not entitled to take under the statute of distributions, because he was convicted in this state of manslaughter in the first degree and by reason thereof sentenced to a term of penal servitude in the state prison; the corpus delicti or crime being that George Fuchs killed his wife, Catherine Fuchs, the woman whose estate is now here for settlement and administration. By a stipulation of the parties the following affidavit of George Fuchs is accepted to save expense in lieu of the proof required by Matter of Fleming, 5 App. Div. 190, 39 N. Y. Supp. 156, that George Fuchs actually killed his wife. All the facts stated in such affidavit are stipulated:

"State of New York, County of Clinton—ss.:

"George Fuchs, being duly sworn, deposes and says: I was the husband of the above-named Catherine Fuchs, whose name before marriage was Katie Fox, now deceased. I am at present confined in the state prison at Dannemora, New York, and am one of the respondents duly served with citation and notice of hearing in the above-entitled special proceeding. I did not ap-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pear on the original return of the citation on July 28, 1914, because I had no attorney. I have since been advised that the special guardian appointed for the infant parties in this proceeding has objected to the administratrix's account on the ground that I should not participate as a distributee in the estate of my late wife, owing to the fact of my conviction. The facts and circumstances regarding this case are as follows:

"I am 50 years of age and was married to the said Catherine Fuchs for 23 years, during which time I worked for the support of my wife and three children. I had a small store, which was worth about four thousand ($4,000) dollars. In the year of 1912 my wife, the said Catherine Fuchs, abandoned and deserted me and my three children and took all my earnings, amounting to about four thousand ($4,000) dollars, with her. I had information that she was unfaithful to me and had eloped with a man formerly in my employ. I searched for them for some time and at last found them. I wished to seek revenge on the man who had broken up my home and honor. She attempted to come between us, and in protecting him she was shot. I did not mean to kill her. On my own confession I was convicted by Judge Swann of the Court of General Sessions of manslaughter in the first degree, and I was sentenced to a term in the state prison not less than 10 years and not more than 19 years and 6 months.

"I am an old man and broken in health. I am confined in the hospital all the time. I am absolutely penniless. I have been told that there may be a chance of my obtaining a pardon in a short time. If that should be granted, I will have no money or property of my own, and no means of starting life again, unless I can participate in a distribution of the estate of my late wife, the said Catherine Fuchs.

"I therefore pray this court to dismiss the objections to the account, and allow me to participate as husband of the said deceased in the distribution of her estate according to the statute of distributions, and for such other and further relief as to the court may seem just and proper in the premises.

"George Fuchs.

"Sworn to before me this 17th day of November, 1914.

"J. E. Signor, Notary Public."

Pursuant to the stipulation, the substance of the affidavit will be taken as true, and this presents a distinction between this case before me and prior reported adjudications of a similar nature.

The power and jurisdiction of the surrogate to determine whether George Fuchs is entitled in equity to share in the distribution of his wife's estate seems to be assumed by counsel under section 2472a of the former Code of 1913. Matter of Thornburgh, 72 Misc. Rep. 620, 132 N. Y. Supp. 268; Matter of Fischer, 153 App. Div. 603, 138 N. Y. Supp. 917; Matter of Cary, 77 Misc. Rep. 602, 605, 132 N. Y. Supp. 682, affirmed 155 App. Div. 946, 140 N. Y Supp. 1112. Sed cf Schlesinger v. Schlesinger, 157 App. Div. 633, 142 N. Y. Supp. 729; Matter of Schnabel, 202 N. Y. 134, 95 N. E. 698; Matter of Watson, 86 Misc. Rep. 588, 597, 148 N. Y. Supp. 902. And no real question is now made here on my jurisdiction to determine it. If the power and jurisdiction so exist, the surrogate would by statute have the same power and jurisdiction to determine George Fuchs' right to succeed under the facts disclosed as the former Court of Chancery or the present Supreme Court of this state alone would have had, were it not for section 2472a, C. C. P. I am not disposed to question or examine at length my own jurisdiction of this controversy at this time, as the estate is small, the matter pressing, and the parties cannot well afford any other solution of the question than mine. What they think I am able to take cognizance of, I will, un-

der the peculiar circumstances, attempt, even though, if I have no jurisdiction, my opinion will go for naught.

The estate here for distribution is very small, and yet I noticed with pleasure that counsel have given the questions arising very close professional consideration. I have endeavored to emulate their excellent example by the bestowal of no less consideration, as the small affairs of these poor people are relatively of more importance to them than are most of the questions of law to the many great estates so frequently before me in this court.

The principle of law really involved in this proceeding was well stated by Lord Justice Fry in Cleaver v. Mutual Reserve Fund Life Association, [1892] 1 Q. B. 147, at page 156:

"That no system of jurisprudence can with reason include amongst the rights which it enforces rights directly resulting to the person asserting them from the crime of that person."

This is a very wide and general statement of a distinguished judge, and I shall have occasion to recur to it later.

Whenever the principle under review is discussed in English or American courts, it seems to be regarded as conventional to refer by way of illustration and justification to the Roman law, both in its ancient and modern forms. The Roman law forfeited an inheritance when the deceased lost his life through the fault or negligence of the heir. "Heres vel legatarius capere non potest * * * ei eripitur" (D. 34, 9, 3; D. 48, 20, 7, 4); and then the inheritance generally fell, by way of caducary succession, to the fiscus (D. 49, 14). The French law was substantially the same in passing over the wrongdoer in any succession; but in French law the succession did not fall to the state, but to the next heir in order of succession (Domat, pt. 2, lib. 1, § 3; Code Napoléon, art. 727). I notice that the new German Civil Code contains a similar provision. Section 2339, subd. 1. The Canadian Code of Quebec follows the Code Napoléon. Articles 610, 893. But it will be observed that all these provisions of civil-law countries are matters of substantive law, and founded on the rule that the wrongdoer was unworthy, "indignus," and the inheritance was consequently taken away from him. A conclusive presumption of the civil law was that by reason of the wrong the testator would have revoked the legacy. There are no such principles known to the common-law system, and I think the civil law is illustrative for us only in so far as it furnishes us with a confirmation of the public policy but lately expressed in those adjudications of the common-law courts to which I shall refer.

The principle in question was recognized in this state in 1889 in an equitable action to enjoin a murderer of a testator from taking under a devise in the testator's will. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. Whether the decision in Riggs v. Palmer was placed on the very best grounds has been doubted, and the case has been liberally criticized in other jurisdictions, but without warrant. The accuracy of the main principle was, I think, intended to be recognized in Ellerson v. Westcott, 148 N. Y. 149, 42 N. E. 540, and not questioned. But in matters of

practice it was held in Ellerson v. Westcott that in a partition action under our Code an amendment to a complaint should be denied on the ground that the amendment was improper, as the murder did not per se make void a devise in a will executed under the statute of wills. What I understand to have been really held in Riggs v. Palmer was that equity would recognize no testamentary succession through a murder committed to bring about such succession. The court intimated that the crime was so abhorrent that the makers of the statute of wills could not be presumed to have contemplated a succession under the statute of wills by one who murdered the testator for the very purpose of gaining by the statute of wills. But the court went further, and it held that in equity no one can be permitted to profit by his own crime. 115 N. Y. 511, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819. This was a statement of our public policy, now recognized in England also. In re Estate of Julian Bernard Hall, [1914] P. 1. Can there be two opinions upon the equity and justice of the general conclusion?

This matter now before me is a case of intestacy, and the husband is entitled to a distributive share in the wife's personalty (section 100, Decedent Estate Law), unless the facts set forth in the stipulation constitute a legal or an equitable bar. That such facts do not constitute a legal bar there ought, I think, to be no question. The statute of distributions has been framed without regard to any such disability, and the statutory rights of the husband are unaffected by the principle in question. This seems to have been the conclusion of American courts held in other states of the Union. Shellenberger v. Ransom, 41 Neb. 631, 59 N. W. 935, 25 L. R. A. 564; In re Carpenter's Estate, 170 Pa. 203, 32 Atl. 637, 29 L. R. A. 145, 50 Am. St. Rep. 765; In re Johnson's Estate, 29 Pa. Super. Ct. 255.

But assuming, without deciding the point, that the surrogate may, under section 2472a, C. C. P., enacted in 1910, entertain in this proceeding assertions of equitable bars to a legal title to a distributive share of the estate, the important question remains: Would the facts stated above really bar, in an equitable forum, George Fuchs from taking a distributive share in his wife's estate under the statute of distributions? This is the great question of the case.

George Fuchs has been convicted of manslaughter. Is this judgment per se a complete bar in equity, or will a court of equity in some cases go behind the judgment and examine all the circumstances attending the commission of the crime in order to ascertain whether or not George Fuchs in fact killed his wife for the purpose of enabling him to share in the distribution of her estate under the statute of distributions? It is denied, in effect, that equity can go behind the verdict or judgment. Ex hypothesi other crimes directly benefiting the slayer of the wife are said by some lawyers of distinction to be necessarily included in the crime of which George Fuchs was convicted. Such seems to have been the reasoning on this point in Lundy v. Lundy, 24 Can. Sup. Ct. 650, 652, reversing McKinnon v. Lundy, 21 Ont. App. Rep. 560, and also in the Estate of Julian Bernard Hall, [1914] P. 1, 7, 8. But even if it is so in an ordinary case,

where the proof of murder rests on the criminal conviction alone, it is not, I think, so in this matter, for here I am relieved from presumptions and permitted by the stipulation itself to look at all the facts stated therein, and these facts beyond all peradventure disclose to me that George Fuchs, while in the course of commission of another crime, killed his wife, intending not to kill her, but to kill her paramour, who had despoiled the slayer of his goods and robbed him of his wife. It would be a curious course of equity if, when these particulars in regard to the killing of the wife are conceded to be true and laid before a judge having equity powers, he could or would ignore them. Equity is the very refinement of adjustments of circumstances which the law ignores and cannot from its generality be presumed to have included in its operation. Law never can provide for all combinations of facts or circumstances. So innumerable are these combinations of facts that they could be expressed only by the media employed in the higher mathematics. Hence equity, in any refined system of jurisprudence, must always supply the omissions and the inherent defects of positive law; otherwise, great injustice under the color of law would be done in many cases.

This brings me to the real consideration of the statement of Lord Justice Fry before noticed. It has been intimated by English lawyers that the statement of that eminent judge is too rigid, and I, with due deference to the eminence of the judge, venture to agree with that suggestion. Lord Justice Fry, as it will be remembered, stated in substance "that no system of jurisprudence could well enforce rights directly resulting from the commission of a crime." It seems to me that equity ought to go farther than this, and determine whether or not the crime was committed for the purpose of influencing the succession, and if it was not so committed that then in equity the conviction under the Penal Law should not be allowed to influence the succession or to take away the convict's right of succession. In substance, this conception was repudiated by Lord Justice Hamilton in Estate of Hall, [1914] P. 7. But his reasoning does not carry conviction to my mind. I am now sitting in equity. Not all crime of the person convicted should debar him in equity from taking under the statute of distributions, but only a crime committed with intent to bring that statute into operation for the benefit of the murderer. Otherwise, logically, any conviction of crime would be a bar, which is the old forfeiture for crime, now abolished in this state. Equity must be susceptible of being administered with relation to actual facts. If it is dependent on presumptions, equity possesses no superiority to law.

George Fuchs' was not "homicide per infortunium," or a homicide by "misadventure," where one by mischance accidentally kills another. George Fuchs, intending to kill A., killed B., his wife. This is murder in criminal law, because criminal law transfers the felonious intent from one to another. The murder was evidently in Fuchs' case, however, alleviated into manslaughter by the provocation. Had George Fuchs been indicted for manslaughter at common law, the indictment would have charged "that he did feloniously kill and slay his wife,"

not that "he did feloniously, willfully, and of malice aforethought kill and murder her." This denoted a distinction which the English cases cited refused to make in the succession cases already cited. But none of those cases disclosed the particular facts stipulated before me, and these peculiar and particular facts permit me to conclude that in equity George Fuchs ought not to be barred from a succession under the statute of distributions, because he had not the slightest intention of killing his wife and profiting by her death, which is the very essence of the equitable bar, as I see it. In equity, George Fuchs is not barred from succession under the statute of distributions.

Settle decree accordingly.