GEORGE R. VAN ALSTYNE, as Executor of the Will of ANNA E. WEIRICH TUFFY, Deceased, CORA M. WAGNER and HARRISON F. WAGNER, Plaintiffs, *v.* MARGARET TUFFY, Individually and as Administratrix of the Estate of JOHN TUFFY, Deceased, WILLIAM P. TUFFY, JAMES TUFFY, GROVER C. TUFFY, MARY HUTH, ELLA ALDER, ALICE TUFFY, WINIFORD TUFFY and MARGARET HAYNES, Defendants.

(Supreme Court, Monroe Special Term, May, 1918.)

Real property — no acquisition of, through crime — tenants by the entirety — actions — executors and administrators — criminal law — wills — evidence.

No one will be permitted to acquire property by his own crime. Where, while plaintiff's testatrix and defendant's intestate were tenants by the entirety of certain real estate, he murdered

her and immediately took his own life, the executor and heirs at law of the wife will be granted judgment in an action in equity against the administratrix and the heirs at law of the husband adjudging that plaintiffs are the owners of the real estate in question in accordance with the will of their testatrix, even though there is no evidence to sustain an allegation of the complaint that the husband wilfully murdered his wife in order that he might thereby acquire and possess the real estate described in the complaint.

ACTION in equity.

Horace G. Pierce, for plaintiffs.

Albert J. O'Connor, for defendants.

THOMPSON, J. It is conclusively established in the testimony that on February 4, 1917, Anna E. Weirich Tuffy, plaintiffs' testatrix, was murdered by her husband, John Tuffy, defendants' intestate, who immediately thereafter took his own life. At this time Anna E. Weirich Tuffy was forty-five years of age and John Tuffy was thirty-six years of age; and they were married June 16, 1916.

On or about June 21, 1916, there was conveyed to John Tuffy and Anna Tuffy, his wife, a house and lot in the city of Rochester by a single conveyance, and they thereupon became seized and possessed of this property as tenants by the entirety. The plaintiffs, who are the executor and the only heirs at law of Anna E. Weirich Tuffy, bring this action against the defendants, who are the administratrix and all the heirs at law of John Tuffy, upon the equity side of the court and ask, among other things, that they be adjudged the owners of the real estate in question in accordance with the provisions of the will of said Anna E. Weirich Tuffy, and that the defendants, and all persons claiming under them, be enjoined from making or asserting any claim of ownership to said premises.

The complaint alleges that the said John Tuffy wilfully murdered his wife, the said Anna E. Weirich Tuffy " in order that he might thereby acquire and possess the real estate above described." The answer admits and alleges the killing but denies it was done with the intent alleged by plaintiffs and asks that the defendants be adjudged the owners of the real estate in question.

There is nothing in the evidence that warrants a finding that the murder was committed with a design on the part of Tuffy to acquire and possess the real estate in question, nor, as I view it, is this a necessary element in order that plaintiffs may obtain the relief they seek. It is a fundamental principle of the civil law, as well as the common law, that no person shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity or to acquire property by his own crime. *Cleaver* v. *Mutual Reserve Fund Life Association,* 1 Q. B. 147, 156.

But the defendants insist that without this finding the plaintiffs cannot succeed, and cite the case of *Riggs* v. *Palmer,* 115 N. Y. 506.

The complaint also seems to have been drawn in the view that this is the law. I am not in accord with this theory. Shall a man who burns his neighbor's building receive insurance for the destruction of his own which was unexpectedly destroyed by the same fire? Shall the man who murders his friend not knowing that he is favored in his will be heard to claim the gift? Shall the man who wrongfully slays his ancestor, without knowledge of the relationship or believing that he had no property, or that he had willed it to others, be heard to assert his heirship upon the plea that he therefore did not commit the crime " for the purpose of influencing the succession? " *Matter of Wolf,* 88

Misc. Rep. 433, 441. I believe not. Nor have the courts of this state so held.

Upon an examination of the *Riggs* case it will be noticed that it expressly held, Judge Earl writing, that the defendant (who murdered his grandfather to prevent his changing his will made in his favor and who was also an heir at law of the deceased) could not take any of his property as such heir. "He made himself an heir by the murder, and he seeks to take property as the fruit of his crime. What has before been said as to him as legatee applies to him with equal force as an heir. He cannot vest himself with title by crime." *Riggs* v. *Palmer, supra,* 513.

It seems to me that this holding disposes of the question of the intent which must have actuated the killing in such cases, for, if this murder was committed with an intent to prevent the testator's making a change in his will, the murderer could not at the same time have intended to secure his rights thereby as an heir at law.

Defendants also urge that the *Riggs* case is authority for the proposition that, while equity may intervene to restrain a murderer from taking under the will of his victim, it will not attempt to restrain a succession under the laws of descent and thereby set aside a statute; they also cite the case of *Carpenter's Appeal,* 29 L. R. A. (Penn.) 145, which attempts to follow the *Riggs* case. Let it be said that the *Riggs* case is authority for the opposite view holding as it does at page 513 that equity will in such very case restrain the operation of the statutes of descent as well as a succession by will. As is said at page 510: "In some cases the letter of a legislative act is restrained by an equitable construction; in others it is enlarged; in others the construction is contrary to the letter * * *. Besides, all laws as well as all contracts may be con-

trolled in their operation and effect by general, fundamental maxims of the common law."

So far as the *Carpenter* case is concerned it is evident the significance of this portion of the opinion escaped the writer's notice.

The courts of the state of New York have always recognized the common law rule that a man may not profit by his own wrong, and the doctrine of the civil law depriving one who procures the death of another from succeeding to his estate, on the ground that he is unworthy. *Ellerson* v. *Westcott,* 148 N. Y. 149; *Matter of Fleming,* 16 Misc. Rep. 442; revd., on other grounds, 5 App. Div. 190; *Logan* v. *Whitley,* 129 id. 666.

For where the natural and direct consequence of a criminal act is to vest property in the criminal, whether he be a thief or a murderer, the thought of his being allowed to enjoy it is too abhorrent for the courts of this state, or of the United States, to countenance, and this whether the crime was committed for that very purpose or with some other felonious design. And equity will restrain in such case though contract, testament or statute be thereby nullified. *New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591. And very recently our Court of Appeals has taken occasion to restate this doctrine. " The principle is fundamental that no man shall be permitted to profit by his own wrong. It enters, by implication, into all contracts and all laws." *People* v. *Schmidt,* 216 N. Y. 324, 341 (1915).

Nor is this case distinguishable by the fact that the defendants' intestate benefited, not himself, but his estate. *Logan* v. *Whitley, supra,* 670.

It follows that the prayer of plaintiffs' complaint must be granted with costs.

Judgment accordingly.