In the Matter of the Estate of TESSIE SPARKS, Deceased.

Surrogate's Court, New York County, November 8, 1939.

*Jacques Isler*, for the petitioner.

*Joseph A. Cox*, for the public administrator of the county of New York, respondent.

*William C. Chanler, Corporation Counsel [Herbert Lefkowitz* of counsel], for the comptroller of the city of New York, respondent.

DELEHANTY, S. This is an application to withdraw funds heretofore deposited in the city treasury as the net estate of deceased payable to her unknown distributees. It is alleged by petitioner that deceased, whom he describes as his wife, died intestate on July 7, 1929, victim of the felonious violence of petitioner who, for this killing, was duly convicted of manslaughter in the first degree on October 15, 1929. Sentenced at that time to State prison for a period of twenty years, petitioner gained his release in July, 1939. Respondents challenge petitioner's right to take any interest in deceased's estate.

*Riggs* v. *Palmer* (115 N. Y. 506 [1889]) is the leading authority in this State on the general problem which the present case illustrates. It was there said that one who murders another shall not

acquire property from the latter's estate either as legatee *or as heir*. The ground of the decision was thus stated (pp. 511, 512): " All laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, *and have nowhere been superseded by statutes.*" (Italics supplied.) Referring specifically to acquisition of property by way of succession in intestacy the court declared (p. 513): " Palmer cannot take any of this property as heir. Just before the murder he was not an heir, and it was not certain that he ever would be. He might have died before his grandfather, [the murdered man] or might have been disinherited by him. He made himself an heir by the murder, and he seeks to take property as the fruit of his crime. What has before been said as to him as legatee applies to him with equal force as an heir. He cannot vest himself with title by crime."

Petitioner seeks to avoid the force of this decision on the theory that its authority is limited to a case where the death of a deceased *testator* is *willfully* accomplished by the killer *with a view to acquisition of the victim's property*. He points out that the present case is one of intestacy and further that the crime of manslaughter in the first degree involves no design to encompass the death of the victim. (Cf. Penal Law, § 1050.) Petitioner argues that since he had not designed to kill deceased his punishment should not extend to his exclusion from the category of deceased's distributees. In support of his argument he cites *Matter of Wolf* (88 Misc. 433 [1914]) as well as numerous decisions in other jurisdictions. In the *Wolf* case it appeared that a surviving spouse (claiming a share of his wife's estate) had killed his wife while intending to kill her paramour. He was convicted of manslaughter in the first degree. Surrogate FowLER held that *in law* the statutory rights of a surviving spouse to succeed to the property of the victim whom he had killed (whether the crime was murder or manslaughter would be unimportant) could not be barred by reason of the criminal deed because " the Statute of Distribution has been framed without regard to any such disability, and the statutory rights of the husband are unaffected by the principle in question," namely, that one may not profit by his own wrong. The question, therefore, the surrogate said, should be viewed as one *in equity*. From this standpoint it seemed to the surrogate (p. 441) " that equity ought to * * * determine whether or not the crime was committed for the purpose of influencing the succession, and if it was not so committed that then in equity

the conviction under the Penal Law should not be allowed to influence the succession or to take away the convict's right of succession." Applying these principles the court there held that the killer might take his distributive share of the victim's property.

The validity of this result can be admitted only if it be the law of New York that since the Statute of Distribution does not expressly exclude from its operation a spouse who kills his mate the legal rights of such a spouse are unaffected by his crime. This concept cannot be justified in the light of controlling authorities and of fundamental principles. It is true that where the victim of homicide has left a will in which the killer is named as *one* of the beneficiaries the will must be probated. A will is not void because a legatee or devisee murders the testator. It is likely that in a will provisions will be found beneficial to the innocent as well as the guilty. Since, therefore, the will must be proved a devisee of realty thereunder is deemed vested with legal title. Rights claimed, however, by reason of this legal title will be barred by equitable and injunctive means. (*Ellerson* v. *Westcott*, 148 N. Y. 149 [1895].) Where a devolution of property by will is involved resort to the theory of a constructive trust apparently must be used to gain a just result. (30 Harv. L. Rev. 622.) But the constructive trust theory is illogical and unworkable in other situations. (49 Harv. L. Rev. 715, 718, 719.) In the present case no legal title subject to a trust could be recognized in the petitioner because, so far as appears *from the record*, there are no other persons claiming the funds for whose benefit such a trust could be held to exist. The present case shows that where a deceased person dies intestate it is necessary to hold either that the killer may claim the intestate property for his own account or that he can acquire neither legal nor equitable interest in it. It is the latter point of view which is established by *Riggs* v. *Palmer (supra)* as controlling in this State. It is that view alone which conforms to the general holdings of the courts of this State on various phases of the general problem. (*Van Alstyne* v. *Tuffy*, 103 Misc. 455, 457, 459; *Logan* v. *Whitley*, 129 App. Div. 666; *Bierbrauer* v. *Moran*, 244 id. 87, 90.)

If it be objected that the court by denying to the killer the right to take as a surviving spouse thereby refuses to give effect to unambiguous statutory text the answer is that this objection has been anticipated and fully explored by the Court of Appeals in *Riggs* v. *Palmer (supra)* and its invalidity has been there conclusively established. It is there shown that the Legislature never could have intended that a felonious killer of a deceased should be included among his heirs. Referring to current statutory terminology, this court must now say that the Legislature never intended a murderer to be comprised within the meaning of the terms " next of kin,"

" distributee " and " surviving spouse." The Legislature has not expressly disabled one guilty of a felonious killing from inheriting from his victim because it was wholly unnecessary to do so. Underlying all legislative enactments are the great maxims of the common law of which the Court of Appeals said in *Riggs* v. *Palmer* (p. 511): " No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime." This principle has been restated thus: " The principle is fundamental that no man shall be permitted to profit by his own wrong. It enters, by implication, into all contracts and all laws (*Riggs* v. *Palmer*, 115 N. Y. 506)." (*People* v. *Schmidt*, 216 N. Y. 324, 341.) This was the state of the law when in 1929 article 3 of the Decedent Estate Law was generally amended. The Legislature must be deemed to have dealt with the rights of a surviving spouse with knowledge of the fundamental limitations expressed in *Riggs* v. *Palmer* and *People* v. *Schmidt* (*supra*).

Principles of construction enforced in this State require the court to hold that not every person once the spouse of a deceased person is, if living, the surviving spouse of that person within our Statute of Distribution. When a status of surviving spouse is asserted as basis for claiming legal rights to property of a deceased, a spouse who has murdered the deceased must be held not to be a " surviving spouse " in the statutory sense since no one can bring into existence by his own wrong a set of property rights beneficial to himself. (*Perry* v. *Strawbridge*, 209 Mo. 621; 108 S. W. 641.) This court is not required to interpret a statute in a manner so mechanical as to produce results revolting to the public sense of justice.

Should the court exclude murderers from the benefits of the Statute of Distribution in intestacy but refrain from excluding therefrom killers convicted of manslaughter in the first degree? To do so would imply acceptance of the idea that the intentions of a felonious killer should be investigated. (Cf. *Matter of Wolf*, *supra*.) On this question it was said in the *Van Alstyne* case (*supra*, at pp. 457, 459): " There is nothing in the evidence that warrants a finding that the murder was committed with a design on the part of Tuffy to acquire and possess the real estate in question, nor, as I view it, is this a necessary element in order that plaintiffs may obtain the relief they seek. * * * For where the natural and direct consequence of a criminal act is to vest property in the criminal, whether he be a thief or a murderer, the thought of his being allowed to enjoy it is too abhorrent for the courts of this State, or of the United States to countenance, and this whether the crime was committed for that very purpose or with some other felonious design." The English doctrine is the same. In *Matter*

*of Hall* ([1914] P. 1, 7, 8) HAMILTON, L. J., having repudiated the suggestion that those guilty of manslaughter should be treated differently from murderers, said: "The distinction seems to me either to rely unduly on legal classification, or else to encourage what, I am sure, would be very noxious — a sentimental speculation as to the motives and degree of moral guilt of a person who has been justly convicted and sent to prison." (See, also, *Lundy* v. *Lundy*, 24 Can. Sup. Ct. 650, and *Cleaver* v. *Mutual Reserve Fund Life Assn.*, [1892] 1 Q. B. 147, 156.) It is pointed out in the *Lundy* case that some judicial thinking on this question has been confused by considerations which would be valid where the death of deceased was due to justifiable or excusable homicide but which are invalid when applied to manslaughter. The rules formulated by the cited English and New York cases, though originally representing a minority view, have in recent years commanded the assent of most courts considering the question. (Atkinson on Wills [1937], § 54; Wharton on Homicide [3d ed.], § 665; 51 A. L. R. 1096; 71 id. 288; *Price* v. *Hitaffer*, 165 A. 470 [Md. 1933].)

One further point of petitioner should be mentioned. He contends that to deprive him of deceased's property is to add to the punishment which he has already undergone. This is not the fact. The court takes nothing away from petitioner. The property in question was that of deceased. On the day when petitioner committed his crime deceased had the prospect of a future existence of which the duration was not less undefined than was that of petitioner. By his felonious act petitioner interrupted the course of nature and caused deceased's untimely death. But for his criminal act the deceased might have outlived petitioner. It will be presumed by the court that she did so. Such in effect is one holding in the case of *Bierbrauer* v. *Moran* (*supra*). In contemplation of law and in respect of all property benefits arising from his victim's estate, it must always be presumed by the court that the victim outlived the killer. This fiction can be indulged so that the crime of felonious killing is set at naught so far as it is humanly possible to accomplish that result. But aside from this concept of survivorship the argument is fully met by the ruling in *Riggs* v. *Palmer* (p. 514). The claim of forfeiture was there argued and two dissenting judges accepted it as valid. The majority said that the exclusion of the murderer from property benefit did not inflict upon him " any greater or other punishment for his crime than the law specifies. It takes from him no property, but simply holds that he shall not acquire property by his crime, and thus be rewarded for its commission."

The petition is dismissed for the reasons stated. Submit, on notice, order accordingly.