In the Matter of the Accounting of HARRY L. STANLEY, as Administrator of the Estate of HANS ECKARDT, Deceased.

Surrogate's Court, Orange County, April 5, 1945.

Thomas R. Hadaway for administrator.

Jacob A. Decker for Anna M. Eckardt, widow.

Charles C. Coleman, special guardian for unknown distributees who might be infants or incompetents.

TAYLOR, S. Hans Eckardt met his death on the 23rd day of June, 1943, at the hands of his wife, Anna Marie Eckardt. The wife was thereafter indicted for murder in the first degree and has since been acquitted upon the ground that she did not know at the time the nature and quality of her act and that at the time of the trial she was sane. (Penal Law, § 1120.)

In order to avoid any confusion preliminarily, it was agreed that the County Treasurer might be appointed administrator of the Hans Eckardt estate. There was a policy of insurance upon the life of the decedent and by common consent the insurance company has paid the proceeds to the administrator. The parties owned a parcel of real estate as tenants by the entirety, and also by common consent the administrator has been collecting the rents, making disbursements therefrom and now has on hand a balance from this source.

Now, upon this accounting the questions arising are: (1) whether or not the wife may share in the husband's estate; (2) whether she is entitled to the proceeds of the life insurance policy and (3) whether or not by virtue of survivorship she is the sole owner of the real property with the incidental question of her right to the rent fund.

That the decedent met his death in the manner stated and that the wife was tried and acquitted is stated in the papers and is uncontradicted.

The question here arises upon objections filed by the special guardian to the administrator's accounting and manner of distribution.

Preliminarily it should be stated that the fact of acquittal cannot be considered here as having the effect of *res judicata* upon the question of whether or not the wife by her act committed a wrong and under well-established principles should not be permitted to profit through her own wrong. The trial of the indictment was between different parties and involved a different basic issue. Whether or not the wife feloniously killed her husband and is thereby precluded from sharing in his estate has not been determined so far as the issue in this court is concerned by the verdict of acquittal. The parties must produce proof and the Surrogate must decide the question *de novo.* (*Vadney* v. *Albany Railway,* 47 App. Div. 207; *Green* v. *Altenkirch,* 176 App. Div. 320; *Farley* v. *Patterson,* 166 App. Div. 358; *Matter of Fleming,* 5 App. Div. 190; *Johnson* v. *Girdwood,* 7 Misc. 651, affd. 143 N. Y. 660; *Wilson* v. *Manhattan Railway Co.,* 2 Misc. 127, affd. 144 N. Y. 632; *People* v. *Rohrs,* 49 Hun 150; *Micks* v. *Mason,* 145 Mich. 212;

*The State* v. *Roach,* 83 Kan. 606; *In Re Estate of Johnston,* 220 Iowa 328.)

The parties have stipulated a portion of the evidence taken upon the murder trial. (See *Matter of Wolf,* 88 Misc. 433; *Smith* v. *Metropolitan Life Insurance Co.,* 125 Misc. 670.) It is quite unnecessary to detail here the gruesome events leading up to this homicide. The expert for the defendant testified that the wife was afflicted with an ailment known as "somnambulism" which is described as a state in which a person goes about and does purposeful acts without knowing what he or she is doing. While it is true that the expert for the People testified that in his opinion the wife was not thus afflicted he did admit that it was quite possible for a person to have no memory if he received a brain injury; at least no memory for a certain period of time; that people in a somnambulistic state have done more than walk; that they have been known to do purposeful acts; that a series of events, emotional strain and sorrow could pile up to such an extent that a person's mind becomes deranged. The unhappy life of this couple, the husband's cruel treatment of the wife and his assault upon her the night of the murder might very well, and the Surrogate finds that it did, create this state of somnambulism and that the wife at the time of the commission of the act did not appreciate the nature thereof and know that it was wrong.

This finding with respect to the conditions under which the wife committed the act is made because in all of the reported New York cases, save two, in which there has been presented the question of the right of one killing another to profit thereby there has been either a conviction of murder or manslaughter or the killer has committed suicide immediately after the commission of the act.

The leading New York case is that of *Riggs et al.* v. *Palmer et al.* (115 N. Y. 506). In that case one claiming under the will of a testator murdered the testator so that he might profit by the decedent's will. There, the killer was convicted of murder in the second degree. It was contended that the will was made in due form, had been admitted to probate and that, therefore, it must have effect according to the letter of the law. But the court answered (p. 509): "But it never could have been their [lawmakers'] intention that a donee who murdered the testator to make the will operative should have any benefit under it", and that "It is a familiar canon of construction that a thing which is within the intention of the makers of a statute is as much within the statute as if it were within the

letter; and a thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers." It was inconceivable, said the court, that it was the legislative intention that the laws respecting the descent and devolution of property should operate in favor of one who murdered his ancestor that he might speedily come, into possession of his estate. The fundamental basis of the decision was that (p. 511) "No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime."

*Ellerson* v. *Westcott* (148 N. Y. 149) is very limited in its scope of actual decision. The case turned upon a question of pleading and it was held that an heir at law of a testator could not maintain partition against a devisee under his ancestor's will upon the theory that an "apparent devise" under the will was void in that the devisee murdered the testator. In this case there was no conviction of the devisee (see 88 Hun 389, 393). Although it was probably unnecessary to a determination of a construction of the section of the Code of Civil Procedure involved, the court expressly left undetermined the question whether trial and conviction for the crime is a condition precedent to invoking the application of the doctrine of the *Riggs* case (*supra*). Perhaps this disclaimer was made because of a statement in the opinion in the court below (88 Hun 393).

In *Matter of Wolf* (88 Misc. 433) which arose in very much the same manner as the case under discussion, it was contended that the husband was not entitled to take under the Statute of Distribution because he was convicted in this State of manslaughter and by reason thereof sentenced to a term of penal servitude in the State prison. It appeared in that case that the husband in attempting to take the life of another accidentally killed his wife and Surrogate Fowler seems to have taken a rather charitable and broad-minded view of the situation, deciding that under the particular circumstances the husband had no intent to kill the wife, and, therefore, should be permitted to share in the estate. This conclusion was criticized in *Matter of Sparks* (172 Misc. 642) and does run counter to the general idea of the decisions. In any event, the facts here are not similar to those in the *Wolf* case (*supra*).

In *Logan* v. *Whitley* (129 App. Div. 666) the prospective husband and wife entered into an antenuptial agreement by which the wife, if she survived the husband, should accept from

his estate the sum of $10,000 in lieu of dower and of her distributive share of the personal property and that the husband's estate should hold all the real estate which he then owned or might thereafter acquire free from any claim of dower, inchoate or otherwise, and the $10,000 was made a charge upon the entire estate. Thereafter the parties intermarried and within a few years the husband shot and killed the wife and then committed suicide. The wife's personal representative brought action against the husband's estate to recover the sum of $10,000. Actually the wife did not survive the husband, but recovery was permitted the court saying (pp. 669–670): " In this case the happening of the contingency upon which the payment was to be made was prevented by the wrongful act of the promisor, and hence neither he nor those claiming under him can defeat an action on the promise by showing that the contingency did not happen. A party may not profit by nor take advantage of his own wrong."

The determination of the ownership of certain real and personal property claimed by the respective heirs, legatees and representatives of a husband and wife who died on the same day was involved in *Bierbrauer* v. *Moran* (244 App. Div. 87). In that case, too, the husband murdered the wife and then committed suicide and the evidence did not establish which predeceased the other. The parties owned certain real estate as joint tenants and the court held that (p. 90) " The willful killing of the wife by the husband, however, stands in the way of his devisee receiving any part of the property on the basis of the fact that the wife did not survive the husband. Else his estate would profit by his crime. The property held by husband and wife as joint tenants must, therefore, be adjudged to have passed upon their deaths to the heir of the wife  *  *  *." There was no appeal from so much of the determination below as involved the ownership of the real property held as tenants by the entirety, and the Appellate Division opinion gives no inkling as to what that decision was. Reference will be made later to this feature of this case. The same principle was held applicable to joint interests of the parties in bank accounts and all of the accounts in banks and trust companies and jointly held mortgages were held to be part of the wife's estate.

*Matter of Fleming* (55 App. Div. 190, *supra*) involved an application to withdraw a certain sum of money deposited with the New York Chamberlain to the credit of a certain partition action. In the court below the application was denied upon the

ground that an indictment was then pending against the petitioner for the murder of his mother, apparently the life income beneficiary of the fund (16 Misc. 442). The real determination here was no more than that if a conviction upon the indictment would not be legal proof of the fact of murder, obviously, an untried indictment would fall even short of that.

*Van Alstyne* v. *Tuffy* (103 Misc. 455) involved the ownership of property held as tenants by the entirety. In that case the husband murdered the wife and immediately thereafter took his own life. Further mention of this case will be made later.

*Matter of Sparks* (172 Misc. 642, *supra*) was also an application to withdraw funds deposited in the City Treasury. The petitioner himself admitted that he had been convicted of manslaughter in the first degree for the killing of his wife, the decedent. There, too, the Surrogate held that the petitioner could not profit by his own wrong and that he could not acquire the property of the person he had murdered either as legatee or as heir. The Surrogate also dismissed the claim that as the conviction was of the crime of manslaughter rather than a murder it involved no design to encompass the death of the victim (cf. Penal Law, § 1050). In this respect the Surrogate differs with the argument advanced in the *Wolf* case (88 Misc. 433, *supra*), and places his decision upon the principle enunciated in the *Riggs* case (115 N. Y. 506, *supra*) that one cannot profit by his own wrong.

*Smith* v. *Metropolitan Life Insurance Co.* (125 Misc. 670) was an action upon a policy of life insurance. The policy was payable to the wife of the insured and provided that if the beneficiary died before the insured the policy should be payable to the insured's estate. The insured murdered the beneficiary for which crime he was convicted and executed. The action was by the personal representative of the insured's estate. There, too, the *Riggs* case (*supra*) was followed and recovery denied to the husband's estate.

There are cases in other jurisdictions which hold that regardless of whether the person who murdered another was sane or insane, acquitted or convicted or not tried at all, he was entitled under the statutes to his distributive share, the reasoning being that courts could not engraft an exception upon the statute. It is quite unnecessary to pursue this question here for New York is committed to the principle set forth in the *Riggs* case (*supra*). The *Riggs* case (*supra*), as well as authorities in other jurisdictions, are very fully examined in *Wall* v. *Pfanschmidt* (265 Ill. 180).

*Matter of Santourian* (125 Misc. 668) involved a survivorship bank account in the names of husband and wife. The husband killed the wife and thereafter pleaded guilty to the crime of murder in the second degree. After referring to the rule established in this State that under like circumstances one may not profit by his own wrong, the learned Surrogate held (p. 670) '' that equity and justice require that this deposit be turned over to the petitioner, the administrator of the deceased wife, for the purpose of paying her funeral expenses and the balance * * * to be devoted towards the support and maintenance of the infant child.''

Turning to another jurisdiction we find the case of *Eisenhardt* v. *Siegel* (343 Mo. 22). There A conveyed to B, the instrument containing a reverter provision to the effect that if B predeceased A the land should thereupon revert to A. A murdered B and it was found as a fact that at the time A was insane. Under these circumstances the court held that the land reverted to A.

As before mentioned no New York case has been found by the diligent search of counsel or through the Surrogate's own efforts wherein one claiming as distributee was acquitted of the killing of a person from whose estate he claimed upon the ground that at the time of the commission of the act he was an idiot, imbecile, lunatic or insane or who was laboring under such a defect of reason as not to know the nature and quality of the act he was doing, or not to know that the act was wrong. (Penal Law, § 1120.)

Reference will, therefore, be made to a few authorities in other jurisdictions.

In *Karow and another* v. *The Continental Ins. Co. of New York* (57 Wis. 56) it was held that, there being nothing in the policy to the contrary, a fire insurance company is not relieved from liability because the property was burned by the assured while in a state of insanity, or unless the burning was caused by the voluntary act, assent, procurement, or design of the assured.

*Holdom* v. *A. O. U. W.* (159 Ill. 619) was an action to recover an amount alleged to be due on a mutual benefit certificate in favor of one who while insane murded the insured. Apparently the question arose as to the sufficiency of the pleading. Replication was filed to the special plea averring that the beneficiary did not murder the insured as alleged in the plea, and further alleging that he did kill the insured while, he, the beneficiary was insane. In the forepart of the opinion it was stated that

only a question of law was involved, that being (p. 621) " does an insane beneficiary in a life insurance policy, who kills the insured under such circumstances as would cause the killing to be murder if the beneficiary was sane, thereby forfeit his right to recover the insurance money?" It was also stated to be a case of first impression. The opinion reviews the cases which hold that insane persons are liable for damages caused by their torts upon the theory that where a loss must fall upon one of two persons equally innocent it must be borne by the one who caused it and that liability in tort is not generally predicated upon intent. Fire insurance cases are distinguished upon the ground that the contract of insurance is to indemnify for the loss incurred even though such loss might be due to the negligence and carelessness of the insured, and that this rule does no violence to what has been termed a maxim of the insurance law, that the assured cannot recover for loss produced by his own wrongful act. The opinion concludes with the statement that (p. 626) " where an insane beneficiary in a life policy kills the assured under such circumstances as would cause the killing to be murder if the beneficiary was sane, such killing does not cause a forfeiture of the policy nor bar his right of recovery for the insurance money."

Wharton on Homicide (3d ed., § 666) thus states the rule with respect to life insurance " And the killing of an insured person by an insane beneficiary does not forfeit the policy or bar a suit for recovery thereon, though the killing was done under such circumstances that it would have been murder had the beneficiary been sane."

Upon this question the Surrogate concludes that legally the wife committed no wrong, not knowing at the time the nature and quality of her act and that therefore she is entitled to take as distributee. The same principle is applied to the life insurance proceeds.

It seems necessary to determine the question of whether or not the wife has now acquired full and sole ownership of the real property held by her and her husband as tenants by the entirety. The administrator has collected all the rents, made disbursements therefrom and now has on hand a balance in the rent fund. The right to those rents is obviously controlled by the determination of the present ownership of the real property.

Referring again to the *Bierbrauer* case (244 App. Div. 87, *supra*), although the Appellate Division decision merely stated

that there was no appeal to it from the Special Term decision with respect to the property held by the parties as tenants by the entirety, that court's opinion did not state what conclusion the Special Term reached. Referring to the record on appeal it appears that the trial court found that the wife died before her husband and the trial court held that " The real property held by the decedents as tenants by the entirety " as well " as that held as joint tenants * * * descend in equal and undivided shares to the heirs at law of each." There, too, obviously, there was no absolving of the husband of willfully and feloniously killing his wife, and this feature may distinguish that case from the one here being decided. If the evidence did not establish which predeceased the other as the Appellate Division held, then the decision of the trial court was sound. (See *Matter of Strong,* 171 Misc. 445.)

*Van Alstyne* v. *Tuffy* (103 Misc. 455, 457, *supra*) is hereinbefore cited. In that case, as in so many others, the husband murdered his wife and then immediately thereafter took his own life. The parties were owners of certain real property as tenants by entirety. It was held that it was unnecessary to allege and prove that the murder was committed with a design to acquire and possess the real estate in question and that rather there should control the " * * * fundamental principle of the civil law, as well as the common law, that no person shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity or to acquire property by his own crime." There was no suggestion in that case that the husband was insane or that he did not know the nature and quality of his act — it seems to have been conceded that the act was willful and wrongful. It was held that the husband's estate could not profit because of the wrong on his part and that this real property could not descend to his heirs even though he actually survived his wife. The *Van Alstyne* case (*supra*) differs from that at bar, in that here there is an express finding that the wife committed no legal wrong and the decision here is that the wife is now the sole owner of the property held as tenants by the entirety and is entitled to the rents in the hands of the administrator, based upon this conclusion of fact. The Surrogate is impressed, however, by the reasoning of the court in *Beddingfield* v. *Estill & Newman* (118 Tenn. 39), which was a suit to recover certain lands and to have a deed of trust made by one C. W. Baird for the benefit of named defendants, declared void. Baird and his wife were the owners of the land in question as tenants by

the entirety. Baird murdered his wife and was convicted. The complainants in order to recover needed to do so upon the basis of their being heirs of the deceased wife and they contended that the husband had forfeited all his rights under a decision of the Tennessee courts and a statute which provided that one who feloniously kills another shall forfeit (p. 44) '' all right, interest and estate in and to said property, and that the same shall go to such other person or persons as may be entitled by the laws of descent and distribution, or by will, deeds or other conveyance made by the deceased when in life.'' It was held that the common-law rule and the statute were not applicable for the reason that the wife did not have any title or estate which could descend to, be inherited or otherwise acquired by her husband, her heirs at law or other persons upon her natural death, that the husband could not and did not inherit, acquire or otherwise take any interest or estate in the lands from or through his wife, and would not have done so, had she died a natural death. The title which he claimed was acquired and vested in him by the conveyances made to him and his wife prior to her death, that during their joint lives by reason of the peculiarity of tenancy by entirety each was the owner of the whole property and nothing was acquired by the survivor, except the elimination of the possibility of the survivorship of the other. (See *Wenker* v. *Landon et al.*, 161 Ore. 265.) The decision here, however, will be upon the finding that the wife committed no legal wrong and that the principle barring one from profiting from his own wrong is inapplicable.

The Surrogate is also asked to determine the ownership of moneys from the sale of an automobile which ordinarily would have been set off to the widow under section 200 of the Surrogate's Court Act. For the reasons before assigned it is determined that this fund shall take the place of the automobile and be part of the statutory setoff.

Decree may be settled by consent or upon five days' notice.