In the Matter of the Accounting of MORRIS SENGILLO, as Administrator of the Estate of CORRADO SENGILLO, Deceased.

Surrogate's Court, Wayne County, November 3, 1954.

*Ira H. Morris* for administrator.

*J. S. Albright,* special guardian for Robert Sengillo, an infant.

TABOR, S.  In this proceeding for the judicial settlement of the account of the administrator of the goods, chattels and credits of Corrado Sengillo, deceased, the only question presented is whether Robert Sengillo, a son of decedent, is entitled to his distributive share.

Corrado Sengillo was shot by his son, Robert Sengillo, at the farm home of the Sengillo family in the town of Walworth, on December 5, 1953.  Robert Sengillo was then fifteen years of age, having been born in the month of February, 1938.  Thereafter he was indicted by the Grand Jury on a charge of murder in the first degree, and the court after a careful examination directed that the action be removed to Children's Court, where Robert Sengillo was adjudicated a juvenile delinquent after the indictment was dismissed.

It is the contention of the administrator that Robert Sengillo is not entitled to his distributive share, he having shot his father. The special guardian contends that since Robert Sengillo was an infant of the age of fifteen years at the time he shot his father, and not having been convicted of homicide, he is entitled to his distributive share.

The attorney for the administrator and the special guardian have discovered no case law in this State on the question here presented where infancy was involved and raised, nor have I found any case in this State.

Under section 83 of the Decedent Estate Law, Robert Sengillo takes his intestate share, unless the conceded fact that he caused his father's death by a rifle shot bars him from taking.  There

is no claim that this shooting was unintentional or accidental, but the special guardian urges that because Robert Sengillo was only fifteen years of age at the time of his father's death, the rule laid down in the leading case of *Riggs* v. *Palmer* (115 N. Y. 506) should not be followed. It is therein stated (pp. 511-512): '' Besides, all laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes.''

The special guardian contends that the rule laid down in the *Riggs* case sixty-five years ago should not be applied to the infant involved in this proceeding. He has stressed recent legislation which indicates a different attitude toward infants and youths who are accused of crimes, citing section 312-b, and sections 312-e through 312-h of the Code of Criminal Procedure, and the several sections of title VII-B of part VI of the same code. The treatment of persons accused of a crime has been vastly improved and every effort has been made to rehabilitate and correct an offender, rather than to merely punish him in later years, yet it does not necessarily follow that the *Riggs* case does not express the correct law of this State. To change and improve the procedural and punishment provisions concerning young people who have committed some crime, even though it be designated juvenile delinquency is one thing, but to say that it necessarily follows that such a person may now take his share in the estate of his parent, does not necessarily or logically follow, and until the Legislature enacts legislation changing the rule laid down in the *Riggs* case, I shall feel the rule must be followed.

In *Matter of Wolf* (88 Misc. 433), cited by the special guardian, the decedent was killed by her husband, although he had no intention of killing her, intending instead to shoot the man who had induced her to leave her home. The husband was allowed to take his intestate share, Surrogate Fowler stating the peculiar and particular facts involved permitted him to conclude the husband did not intend to kill his wife and profit by her death. The *Wolf* case runs counter to the rule of the *Riggs* case, and has been criticized in *Matter of Sparks* (172 Misc. 642).

In *Matter of Eckardt* (184 Misc. 748) the wife was allowed to take since she killed her husband while in a state of somnambu-

lism brought on by her husband's conduct and did not appreciate the nature of her act and did not know it was wrong.

There is no claim made in this proceeding that Robert Sengillo was laboring under any mental or physical disability or that he shot his father other than intentionally.

As was so well stated by the Appellate Division of this department in *Bierbrauer* v. *Moran* (244 App. Div. 87, 89), " The basic principle applicable is that no man shall be permitted to profit by his own wrong." (See, also, *Logan* v. *Whitley,* 129 App. Div. 666, and *Van Alstyne* v. *Tuffy,* 103 Misc. 455, 456).

It has been contended that to deprive this boy of his distributive share is to impose an additional penalty. To hold that he cannot take his share is no additional penalty or punishment since he had no property, the property in question being that of Corrado Sengillo. On December 5, 1953, deceased had the prospect of a future life, the duration or length of which was uncertain, and this same situation was true as to Robert Sengillo. The duration of the uncertainty of the future life of the father was that day made certain by an act of Robert Sengillo and by the same act he cannot profit, since to hold that he takes his share as a distributee, would be to reward him for shooting his father.

Submit decree in accordance with this decision.