285 P.2d 789

Sally REAGAN; John H. Reagan; Albert Leon Reagan; A. A. Reagan, Jr.; C. A. Reagan; Louise R. McCall; George A. May; Alvin R. Morrison; Charley Thomas Morrison; Sue M. Brown; Thomas D. Reagan; Timothy L. Reagan; Lee A. Reagan; Frank S. Reagan; and Abilene Christian College, a corporation, Plaintiffs-Appellants,

v.

J. B. BROWN, Jr.; James Brit Brown, Jr.; J. B. Brown; A. E. Whitehead; Vallie Whitehead; Thos. E. Boyd; William Stevens; Ruth C. Stevens; Magnolia Petroleum Co., a corporation; Magnolia Petroleum Company, a corporation; United States Smelting, Refining and Mining Co., a corporation; United States Smelting, Refining and Mining Company, a corporation; Tide Water Associated Oil Company, a corporation; Tidewater Associated Oil Company, a corporation; Odessa Natural Gasoline Co., a corporation; Trebol Oil Co., a corporation; Warren Oil

Corporation, a corporation; The Following Named Defendants by Name, if Living; if Deceased, Their Unknown Heirs: Susie L. Cheney; Rebecca M. King; Bettie C. Dickinson; B. C. Dickinson; Bernice Dickinson; Grant Corbin; Paul L. Davis; Stephen H. Orendorff; Mary A. Orendorff; J. E. Simmons; Beulah H. Simmons; Bruce K. Matlock; Bonnie H. Matlock; E. J. Swanson; R. H. Reed; Hugh W. Ferguson, Jr.; E. G. Rodman; W. E. McLaughlin; Lydia McLaughlin; Reese Cleveland; Rozelle B. Cleveland; W. F. Martin; Lillah Martin; Wm. D. Austin; Mildred M. Austin; H. L. Neeb; Marion C. Neeb; J. Hugh Liedtke; and William O. Liedtke; Unknown Heirs of the Following Named Deceased Persons: James Brit Brown; J. B. Brown; Dollie R. Brown; and Dollie Reagan Brown; and All Unknown Persons Claiming Any Lien, Interest or Title in the Premises Adverse to Plaintiffs.

No. 5923.

Supreme Court of New Mexico.

July 7, 1955.

Lynell G. Skarda, Clovis, Fred M. Standley, Santa Fe, for appellants.

T. E. Mears, Sr., Portales, James T. Jennings, Hervey, Dow & Hinkle, W. E. Bondurant, Jr., Roswell, for appellees.

McGHEE, Justice.

The plaintiffs-appellants are collateral heirs of Dollie B. Brown, a widow who was killed by her only child, James B. Brown, Jr., and who at the time of her death was the owner of an undivided five-eighths interest in the real property involved in this action, the son having inherited the remaining interest from his father who died on August 20, 1940. The defendants-appellees, other than Brown, claim various mineral interests in the realty arising from conveyances by James B. Brown, Jr., and his successors in interest between the year 1947 and the filing of this ·action in 1951.

Judgment was rendered for the defendants below and as grounds for reversal the plaintiffs here urge:

1. An only son who murders his widowed mother may not inherit her estate, notwithstanding the fact our laws of descent do not by their terms prohibit it, and they are her lawful heirs.

2. If he must be held to be her heir because of the wording of our statute on descent, then a court of equity should decree him to be a constructive trustee, holding the legal title for their benefit.

.The crime was committed by the defendant, James B. Brown, Jr., on June 5, 1942. On August 1, 1942, he entered a plea of guilty to murder in the second degree and received a sentence therefor of not less than forty years nor more than fifty-five years in the penitentiary. His mother died intestate, her estate was regularly probated in the Probate Court of Roosevelt County, New Mexico, and on May 22, 1943, a final decree was there entered adjudging James B. Brown, Jr., to be the son and the sole heir at law of Dollie R. Brown and the owner of all her real and personal property.

The position that one who feloniously kills his ancestor is not precluded, absent a prohibitory statute, from inheriting the estate of his victim is adopted in the following cases, as compiled in Annotation entitled "Felonious killing of ancestor as affecting intestate succession", appearing in 39 A.L.R.2d 477:

Georgia.—Hagan v. Cone, 1917, 21 Ga. App. 416, 94 S.E. 602;

Illinois.—Wall v. Pfanschmidt, 1914, 265 Ill. 180, 106 N.E. 785, L.R.A. 1915C, 328, Ann.Cas.1916A, 674;

Kansas.—McAllister v. Fair, 1906, 72 Kan. 533, 84 P. 112, 3 L.R.A.,N.S., 726, 115 Am.St.Rep. 233, 7 Ann. Cas. 973;

Kentucky.—Eversole v. Eversole, 1916, 169 Ky. 793, 185 S.W. 487, L.R.A. 1916E, 593;

Minnesota.—Gollnik v. Mengel, 1910, 112 Minn. 349, 128 N.W. 292;

Nebraska.—Shellenberger v. Ransom, 1894, 41 Neb. 631, 59 N.W. 935, 25 L.R.A. 564;

Nevada.—Wilson v. Randolph, 1927, 50 Nev. 371, 261 P. 654;

Ohio.—Deem v. Millikin, 1892, 6 Ohio Cir.Ct.R. 357, 3 Ohio Cir.Dec. 491, affirmed without opinion, Deem v. Milliken, 53 Ohio St. 668, 44 N.E. 1134;

Oklahoma.—Holloway v. McCormick, 1913, 41 Okl. 1, 136 P. 1111, 50 L.R.A.,N.S., 536;

Pennsylvania.—In re Carpenter's Estate, 1895, 170 Pa. 203, 32 A. 637, 29 L.R.A. 145, 50 Am.St.Rep. 765; In re Johnson's Estate, 1905, 29 Pa.Super. 255;

Texas.—Hill v. Noland, 1912, Tex.Civ. App. 149 S.W. 288;

Washington.—In re Duncan's Estates, 1952, 40 Wash.2d 850, 246 P.2d 445, 39 A.L.R.2d 473.

It is stated at page 483, of said annotation:

"* * * Inherent in the reasoning of the courts which take the view that the killer is not precluded from inheriting is the suggestion that the question of inheritance is entirely statutory, and hence it is for the legislature rather than the courts to say whether the killer should inherit. Accordingly, where the legislature has enacted a clear and unambiguous statute of descent, with no provision for inheritance other than the death of the ancestor, the courts are powerless to prevent such inheritance regardless of their abhorrence of the crime and however contrary to public policy it may be to have the murderer take from his victim by descent. Another argument which has often been pressed, not however with great success and seldom with controlling force, is that to preclude the heir from his inheritance would violate the constitutional provisions against forfeiture of estates, attainder, or corruption of the blood."

Similarly compiled in the above annotation are the following cases holding that one who feloniously kills his ancestor is not entitled to intestate succession in the estate of his victim:

Alabama.—Weaver v. Hollis, 1945, 247 Ala. 57, 22 So.2d 525;

Iowa.—McDonald v. Mutual Life Ins. Co., 1916, 178 Iowa 863, 160 N.W. 289;

Maryland.—Price v. Hitaffer, 1933, 164 Md. 505, 165 A. 470;

Michigan.—Garwols v. Bankers Trust Co., 1930, 251 Mich. 420, 232 N.W. 239;

Mississippi.—Anderson v. Anderson, 1930, 158 Miss. 116, 130 So. 91;

Missouri.—Perry v. Strawbridge, 1908, 209 Mo. 621, 108 S.W. 641, 16 L.R.A.,N.S., 244, 123 Am.St.Rep. 510, 14 Ann.Cas. 92; Hopkins v. Metropolitan Life Ins. Co., Mo.App. 1941, 151 S.W.2d 527;

New York.—In re Wolf, 1914, 88 Misc. 433, 150 N.Y.S. 738; In re Sparks' Estate, 1939, 172 Misc. 642, 15 N.Y.S.2d 926;

North Carolina.—Parker v. Potter, 1931, 200 N.C. 348, 157 S.E. 68; Garner v. Phillips, 1948, 229 N.C. 160, 47 S.E.2d 845;

England.—Estate of Crippen (1911) Prob. 108.

Canada.—Re Medaini, 38 Brit.Col. 319, (1927) 4 D.L.R. 1137.

Australia.—Re Tucker (1920) 21 New So.W.St. 175.

At page 488, 39 A.L.R.2d, the reasoning of the latter courts in support of their opinions is succinctly summarized as follows:

"In taking the view that a person who feloniously kills his ancestor is not entitled to intestate succession in the estate of his victim, most courts have cited maxims of the common law which in effect declare that no person should be permitted to take advantage of his own wrong. Such courts reason that such maxims constitute a rule of public policy which the legislature in the enactment of statutes of descent and distribution had no intention of abrogating, and that the interpretation of the law as precluding a person who feloniously kills his ancestor from succeeding to his victim's estate is but an expression of the legislative intent rather than an abrogation of the statutes by judicial construction. To the contention that to preclude the inheritance is to constitute forfeiture of estate, attainder, or corruption of the blood, in violation of constitutional prohibitions, the courts have answered that, as there is no vesting of the estate in the murderer because of his crime, there is no forfeiture, and since the murderer never becomes a distributee there is no corruption of the blood. * * *"

The annotation to which we have referred includes all cases on the subject and is preceded by report of In re Duncan's Estates, Washington, 1952, cited supra, where the cases are also summarized.

▋ Our statutes on descent and distribution are plain and unambiguous. They provide that subject to marriage contracts and the payment of debts of the decedent the property goes to designated persons. § 29-1-10, 1953 Compilation. To adopt the contention of the plaintiffs on this point

we must read an amendment into the statute and say, "Provided, however, one may not inherit the estate of one he has murdered." This we regard as a legislative matter and the legislature which has only recently adjourned has passed an act now in effect providing a murderer may not inherit the estate of his victim. Ch. 61, Laws of 1955.

We will follow the line of reasoning of the cases which refuse to amend or set aside the unambiguous statutes of descent and distribution, and hold the property of the mother descended to the son, James B. Brown, Jr.

It is abhorrent to us that a murderer can profit by his crime and the assertion of the plaintiffs that Brown should be held to take the legal title as a constructive trustee has our sympathy. It is so held in some opinions cited in the plaintiffs' brief and ably discussed at the oral argument. However, before deciding that question, we must dispose of the plea of limitations interposed by the defendants to such claim.

Sections 23–1–4 and 23–1–18, 1953 Compilation, read, respectively, as follows:

"Accounts—Unwritten contracts—Injuries to property—Conversion—Fraud —Unspecified actions—Four-year limitation.—Those founded upon accounts and unwritten contracts; those brought for injuries to property or for the conversion of personal property or for re- lief upon the ground of fraud, and all other actions not herein otherwise provided for and specified within four (4) years."

"Limitations do not run against trust actions fraudulently concealed.—None of the provisions of this chapter shall run against causes of actions originating in or arising out of trusts, when the defendant has fraudulently concealed the cause of action, or the existence thereof from the party entitled or having the right thereto."

It was admitted by the plaintiffs that there or no facts tolling, postponing or suspending such statutes if they apply to the facts of this case and are valid and constitutional under all of the laws of New Mexico.

Although these two sections have been in effect since their adoption in 1880, we appear to have but one case where the question whether they applied to trusts was decided, that of Patterson v. Hewitt, 1901, 11 N.M. 1, 66 P. 552, 55 L.R.A. 658, affirmed, 1904, 195 U.S. 309, 25 S.Ct. 35, 49 L.Ed. 214. This Court said, at pages 39, 40, of 11 N.M., at page 564 of 66 P.:

" * * * It cannot well be said that this section [23–1–4, supra] is alone applicable to actions at law, so as to exclude agreements establishing trusts relations cognizable in courts of equity and it would seem that the section

was intended to be broad enough to include equitable actions, for the reason that another provision applies the same limitations to actions for relief upon the ground of fraud, which is a recognized basis for the exercise of equitable jurisdiction.

\*　　\*　　\*　　\*　　\*　　\*

"This section [23-1-18, supra] does not apply, of course, to all trusts, but it is applicable directly, to trusts other than those where the defendant has 'fraudulently concealed the cause of action, or the existence thereof, from the party entitled or having the right thereto.' There is no attempt in this case to show that there was any fraudulent concealment of the cause of action, or the existence thereof, from the appellants. \*　\* \*"

It is true the Court was there considering an express trust, but we think its statement in the second paragraph above was sound. If it was not intended that actions on constructive trusts should be included within the all-inclusive words, "and all other actions not herein otherwise provided for and specified within four (4) years", of § 23-1-4, then why have we § 23-1-18 that the provisions should not run against causes of action originating in or arising out of trusts when the defendant has fraudulently concealed the cause of action, or the existence thereof, from the party entitled or having the right thereto? The question answers itself and we are unable to agree with plaintiffs' argument that we do not have a statute of limitations on trusts.

 We reluctantly hold the plaintiffs' cause of action seeking to have Brown declared to be a constructive trustee is barred by our four-year statute of limitations quoted above.

What we have said makes it unnecessary to decide the remaining point in the case. The judgment is affirmed.

It is so ordered.

LUJAN, SADLER, and KIKER, JJ., and ROBERT W. REIDY, D. J., concur.

COMPTON, C. J., not participating.