OPINION OF THE COURT
George G. Bernhard, S.
The County Court sitting with a jury has found in the trial *259 of an indictment that the deceased persons, who were husband and wife, died violently at the hands of their only son at their home in Dutchess County on April 30, 1990. Robert Allen Dorsey stands convicted and incarcerated for murder and is presently pursuing an appeal.
This court has found that they died testate and has admitted to probate wills which provide that, in the event of common disaster, that the entire estate is left to their "beloved son, Robert Allen Dorsey”.
The County Finance Commissioner has been appointed as Administrator c. t. a. and, as such, has marshalled the assets which are ready for distribution, subject to the commission and fees of the attorneys and guardians involved.
Other than Robert Allen Dorsey, the following persons are in the position of possible distributees:
The children of Robert Allen Dorsey:
(1) David Dorsey
North Carolina
(2) Lori Masti, guardian of Stacy Dorsey (an infant)
Orange Park, Florida
The brothers of Lewis Dorsey:
(3) Joseph S. Dorsey
(4) Alfred Dorsey
The children of Lewis Dorsey’s predeceased sister, Ethel Centore:
(5) Richard M. Centore
Enfield, Connecticut
(6) Wayne L. Centore
Enfield, Connecticut
(7) C. Thomas Centore
Enfield, Connecticut
The siblings of the mother of Mary J. Dorsey:
(8) Joseph S. Holly
Johnson City, New York
(9) Mary Holly Daly
Somers, New York
Descendants of the siblings of Daniel Holly, the grandfather of Mary J. Dorsey:
(10) Mary Sedlaced (deceased 1954)
Sherman Oaks, California
(11) John Holly (deceased)
Czechoslovakia
The salient issue of these combined estates in the approximate amount of $147,000 is the effect of the conviction of Robert Allen Dorsey upon its distribution. This court originally was persuaded to await the outcome of his appeal from his conviction. However, counsel for the collateral relations urges that the judgment of conviction is a sufficient basis for *260 determination, despite the pendency of an appeal therefrom. (Cf., Matter of Arnica Mut. Ins. Co., 85 AD2d 727 [2d Dept 1981].)
This court is also persuaded by the advice that the appeal to the Appellate Division of this Department has been pending since April 23, 1991, and that no date for argument has been scheduled so that this court will proceed presently to adjudication.
The general principle adopted by the courts of this State is that a murderer will be barred from taking under the will of his victim to deprive him of "profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime” (Riggs v Palmer, 115 NY 506, 511), so that 16-year-old Elmer Palmer was barred from receiving the farm either as remainderman under his grandfather’s will or by inheritance. This was due to Elmer having poisoned the gentleman who had contemplated testamentary changes in favor of a new step-grandmother. The rationale was that the Legislature, in enacting the substantive laws of wills and succession, which are silent on the question, could not have intended that one could take property from an ancestor by murder in violation of the ancient "Civil Law” derived from the principles of natural law. This conclusion appears to be an adaptation of the equity maxim "Ex turpi causa non oritur actio”. (This civil law maxim bars persons from relying on their own violations of law as a basis for a claim.)
That principle has been applied in this State to bar persons convicted of manslaughter (wife slain) (see, e.g., Matter of Sparks, 172 Misc 642; Matter of Drewes, 206 Misc 940), and even a 15-year-old parricide who was convicted of juvenile delinquency (Matter of Sengillo, 206 Misc 751). The rule was relaxed to permit taking by persons successfully defending upon grounds of insanity (somnambulism) (see, e.g., Matter of Eckardt, 184 Misc 748), or even when the decedent was found not to be the distributee’s intended victim (Matter of Wolf, 88 Misc 433, where the husband missed the wife’s paramour with fatal consequences to the wife).
Thereupon, the collateral relatives assert that the distributees of Robert Allen Dorsey are barred by their father’s evil deed from participating in the estate. (Citing, e.g., Bierbrauer v Moran, 244 App Div 87; Matter of Miller, 17 Misc 2d 508; see also, Matter of Jacobs, 2 AD2d 774; Van Alstyne v Tuffy, 103 Misc 455.)
*261 Some of the broad language in this area is reminiscent of the old English sanctions employed to denude political or religious dissidents such as Bill of Attainder (see, US Const, art I, § 9, cl [3]; § 10, cl [1]) and corruption of blood to strip their descendents of property (US Const, art III, § 3, cl [2]; Annotation, 53 L Ed 2d 1273, 1287-1288).
Nonetheless, a closer examination of the New York cases justifies ample reluctance to rely upon them for a blanket bar against distributees (or descendants) of the slayer. Some were murder-suicide cases in which the beneficiaries or distributees of the victim were different than those of the killer. In Bierbrauer (supra) the estate of the killer husband was barred from claiming his survival of his slain wife with respect to real estate owned as tenants by the entirety. Rather, she was deemed to have survived him so that her distributees inherited property held jointly by the couple with right of survivor-ship. (See also, Matter of Santourian, 125 Misc 668; see also, Van Alstyne v Tuffy, 103 Misc 455, supra.) However, one bank account which had no provision for survivorship was divided equally between the two estates upon the ground that the homicide did not divest the slayer of interest in his own property. (See, Bierbrauer v Moran, 244 App Div 87.)
In Matter of Jacobs (2 AD2d 774, supra) a mother killed her son and then died by her own hand. The Appellate Division of this Department reversed the gentle-hearted Surrogate of Queens County who apparently ruled in favor of the mother’s estate, that such a tragedy must have been a result of insanity. The appellate court awarded letters of administration to the Public Administrator and revoked those issued to the same individual who had already been appointed the mother’s administrator. So, too, in Matter of Miller (17 Misc 2d 508, supra) the estate of another homicidal-suicidal mother was deprived of an interest in her son’s estate and from his benefits under the New York State Employees’ Retirement System.
But, on the other hand, a bank account with right of survivorship was distinguished from a real estate tenancy by the entirety, in that either party might withdraw funds unilaterally from the account, so that the account was divided equally between the estate of the slain spouse and her suicidal slayer spouse (Matter of Pinnock, 83 Misc 2d 233), although mutual life insurance policies between victim and killer went to the estates of each insured rather than to the estates of beneficiaries.
*262 Furthermore, where the perpetrator survives the homicidal transaction, the courts have shown more caution in diminishing his property rights. For example, he was not stripped of his interest in the realty owned as tenants by the entirety in Matter of Nicpon (102 Misc 2d 619). Although barred from claiming to be the survivor, he was permitted to retain a life estate with remainder to the children of the marriage. (Matter of Nicpon, 102 Misc 2d 619, in apparent contradiction to Matter of Santourian, 125 Misc 668, supra, where the imprisoned killer spouse was deprived of his interest in a joint account.)
Moreover, if one returns to the germinal case of Riggs v Palmer (supra), one reads a strong dissent by Judge Gray (115 NY 506, 515) who argued that barring Elmer Palmer from taking under the express terms of his grandfather’s will (1) was an impermissible amendment of the New York Statute of Wills beyond the power of the court, and (2) adds unauthorized additional punishments to those prescribed by the Penal Law.
It is the latter point which requires present scrutiny. The courts of several States have taken this view of judicial restraint. (See, e.g., Bird v Plunkett, 139 Conn 491, 95 A2d 71; In re Emerson, 191 Iowa 900, 183 NW 327; Schellenberger v Ransom, 41 Neb 631, 59 NW 935; Matter of Duncan, 40 Wash 2d 850, 246 P2d 445; but see, United States v Foster, 238 F Supp 867 [Mich]; Price v Hitaffer, 164 Md 505, 165 A 470; Budwit v Herr, 339 Mich 265, 63 NW2d 841; Perry v Strawbridge, 209 Mo 621, 108 SW 641; Riggs v Palmer, 115 NY 506, supra; De Zotell v Mutual Life Ins. Co., 60 SD 532, 245 NW 58.) While other States have taken a middle ground of permitting the grant of property to the slayer but imposing a constructive trust upon the proceeds in favor of the other lawful distributees of the victim. (Whitney v Lott, 134 NJ Eq 586, 36 A2d 888; Bryant v Bryant, 193 NC 372, 137 SE 188; Bounds v Caudle, 560 SW2d 925 [Tex Sup Ct]; Matter of Safran, 102 Wis 2d 79, 306 NW2d 27; see, Annotation, 25 ALR4th 787.)
Some States have attempted to deal with the problem by legislation (see, e.g., Hamblin v Marchant, 103 Kan 508, 175 P 678; Wilson v Bates, 313 Ky 333, 231 SW2d 39), and it seems quite apparent that a comprehensive statute on the subject would provide the best guidance to a court as to the manner of disposition, particularly Uniform Probate Code § 2-803 (8 *263 ULA 172 [1990]), which simply treats the killer as having predeceased his victim(s).
The attorney for the two children of Robert Allen Dorsey is acutely aware that they are not only his distributees, but as the only grandchildren, they are also the only surviving descendants of the two victims. It seems highly unlikely that the two victims ever intended that their only grandchildren would be cut off by the criminal acts of their father. But it is equally true that result-driven decisions in this area, or any area of the law, tend to produce inconsistent results, uncertainty and, finally, chaos. Counsel for the collaterals urges, in this connection, that the rights of descendants, per stirpes, ripen only when their parent expires while indisputably Robert Allen Dorsey survives in prison.
Counsel for the grandchildren urges that this court apply the legal fiction (employed in Uniform Probate Code § 2-803, 8 ULA 172 [1990]) that the slayer has predeceased his victims for inheritance purposes. That would result in the application of EPTL 3-3.3 to construe the disposition to him as not lapsing but vesting per stirpes to his children. The parallel result in descent and distribution would be the same in intestacy (EPTL 4-1.1 [a] [6]). It also provides the same result as in the prior New York cases so that Robert Allen Dorsey does not profit from his own wrong and conforms to the constitutional policy against corruption of blood by not visiting the punishment of disinheritance upon the innocent descendants of the murderer.
Furthermore, this interpretation goes no further than that of the Court in Riggs v Palmer (115 NY 506, 511, supra) and follows the logic of Bierbrauer v Moran (244 App Div 87, 90, supra) in simply ruling that the slayer, or his estate, may not be heard to claim survival of his victim and therefore the court should make such disposition as the law provides in the event of his nonsurvival. In that event, it follows ineluctably that the estate passes to the descendants of the deceased persons rather than collaterals in the absence of a different effective testamentary disposition.
Finally, it is patent that the doctrine articulated in Riggs v Palmer (supra) is an outstanding example of judicial activism in interpreting the applicable statutes. Inasmuch as our Legislature has not seen fit to pass upon the issues one way or the other, this court determines that the doctrine should not be extended to bar persons who are direct descendants of both *264 the perpetrator and the victim. This accords with the formula employed by the Court of Appeals in Petrie v Chase Manhattan Bank (33 NY2d 846) where the beneficiary of the trust murdered the settlor of the trust and the Court of Appeals adopted the finding that the killer had initially exercised a nefarious influence over the settlor and the Court went on in a memorandum decision to banish the two innocent contingent remaindermen of the trust who were unrelated to the settlor, upon the theory that their rights are to be divested in favor of those "who would benefit had the wrong not been inflicted” (33 NY2d 846, 848 [emphasis added]). The Dorsey grandchildren, in the normal order of things, were in direct line to benefit if a wrong had not been inflicted, i.e., if the decedents had passed away without any fault on the part of Robert Allen Dorsey and provided, perchance, he himself were unable to take. There is no question but that under the ordinary course of descent and distribution, grandchildren are preferred to collaterals. There is no sound reason for changing this course.
In addition, contrary to the suggestions of counsel, Mary and Lewis Dorsey were not rendered intestate by their son’s crime. Rather, their intended will beneficiary was rendered ineligible by his own hand to accept the disposition (in the same manner as if he were deceased), so that the decedents intended that their disposition would be made, per stirpes, in favor of his two children, their grandchildren.
Accordingly, it is the decree of this court that the estate should be divided equally between David Dorsey and Stacy Dorsey, through her legal guardian, Terry Mast, subject to administration costs and expenses and the legal fee of their attorney Fred W. Schaefer, Esq., who shall submit an affidavit in the usual form of his services, together with a proposed decree.