OPINION OF THE COURT
Albert J. Emanuelli, S.
FINAL ACCOUNT OF ADMINISTRATRIX
This is a proceeding to settle the final account of proceedings in decedent’s estate of the administratrix (petitioner), one of eight nieces and nephews of decedent who are the estate’s only prospective distributees.
*626 MURDER OF DISTRIBUTEES — DISQUALIFICATION OF RESPONDENT!
MOTION TO DISMISS OBJECTIONS
Petitioner has, for the second time, moved for summary judgment, dismissing objections to the account filed by Raymond Macaro, Jr. (respondent), another of decedent’s eight surviving nieces/nephews, on the ground that respondent should be disqualified as a distributee of decedent’s estate under the common-law tenets set forth in Riggs v Palmer (115 NY 506), due to his convictions for intentionally killing two of decedent’s siblings prior to decedent’s death.
BACKGROUND
i. Decedent’s Distributees
Decedent died intestate on October 24, 1994, without a surviving spouse, issue, or parents.
Decedent had five siblings, all of whom predeceased her, to wit: (1) Vincent Macaro, who died in October 1981, had five children surviving decedent, including petitioner; (2) Xavier Macaro, Sr., who died in February 1989, had two children surviving decedent — Xavier, Jr., and Louise; (3) Joseph Mac-aro, who died in May 1991, had no children surviving decedent; (4) Raphael Macaro, Sr., also known as Ray Macaro, Sr.— respondent’s father (Ray Sr.) — who died on September 14, 1988, had one child surviving decedent (respondent); and (5) Regina Deine (Deine), who died September 16, 1988, had no children surviving decedent.
ii. The Deaths of Ray Sr. and Regina Deine
By judgment rendered on February 20, 1996, after a jury trial, respondent was convicted for, inter alla, the homicides of Ray Sr. and Deine, both of which occurred at Ray Sr.’s East-chester home between September 14 and 16, 1988, to wit: (i) as to Deine, second degree murder,.and (ii) as to Ray Sr., first degree manslaughter, under the theory of “extreme emotional disturbance.”
Respondent’s convictions, including that for first degree manslaughter in the death of Ray Sr. — a lesser included offense of the second degree murder charge for which he was indicted— *627 came after the jury’s rejection of respondent’s proffered defense of insanity.[1]
iii. The Administration Proceeding
In June 1996, petitioner applied for letters of administration. Respondent appeared by counsel, but did not file objections to petitioner’s appointment, and the court issued limited letters of administration to petitioner on April 7, 1997.
Respondent’s “status” as a distributee of decedent’s estate was not challenged during the administration proceeding.
iv. The Accounting Proceeding
In August 1998, petitioner filed the underlying petition to judicially settle her account as administratrix wherein she prayed for the disqualification of respondent as a distributee, based on his convictions for the homicides of Ray Sr. and Deine, under Riggs v Palmer (supra).
Initially, on account of his incarceration, the court appointed a guardian ad litem to represent respondent herein.
Subsequently, respondent appeared by counsel, and filed verified objections to the account, as to petitioner’s prayer to disqualify him as a distributee, contending that the tenets of Riggs v Palmer (supra) apply only where one’s criminal acts caused the death of the decedent from whose estate he/she stands to inherit.
v. Petitioner’s Initial Motion
By decision and order dated January 20, 1999, the court denied, without prejudice, petitioner’s initial motion for summary judgment, seeking dismissal of respondent’s objections, finding that the motion was not sufficiently supported by the allegations of someone with personal knowledge of the facts in question.[2]
*628 THE INSTANT MOTION
By notice of motion, petitioner again moves for summary judgment, dismissing respondent’s objections, on the ground that, by virtue of his intentional homicide of Ray Sr. and Deine, respondent is disqualified as an intestate distributee of decedent’s estate, under Riggs v Palmer (supra). Respondent opposes the motion, on the grounds he raised in his objections.
APPLICABLE LAW AND COURT’S CONCLUSIONS
i. Summary Judgment
It is settled that the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact and entitlement to judgment as a matter of law (see, CPLR 3212 [b]; Cox v Kingsboro Med. Group, 88 NY2d 904; Alvarez v Prospect Hosp., 68 NY2d 320; Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; Zuckerman v City of New York, 49 NY2d 557, 562).
Failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers (see, Winegrad v New York Univ. Med. Ctr., supra, at 853).
However, once this showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to establish the existence of triable, material issues of fact which require a trial of the action (see, Zuckerman v City of New York, 49 NY2d 557, supra).
Having examined the papers submitted in support of petitioner’s motion, the court is able to glean therefrom the following undisputed material facts: (i) respondent was convicted of the intentional homicides of both Ray Sr., his father (see, Penal Law § 125.25 [1] [a]; § 125.20 [2]) and Deine, a paternal aunt (see, Penal Law § 125.25 [1]); (ii) decedent, who had no spouse or children, died intestate, having been predeceased by her parents, grandparents, and all five of her siblings, and was survived only by her eight nieces and nephews, including respondent, as her distributees; (iii) respondent’s purported property “right” as an intestate distributee of decedent did not accrue or exist until decedent’s death; and (iv) since decedent died after August 31, 1992, under the applicable laws of intestacy (see, EPTL 4-1.1 [a] [5], [6]) and distribution of intestate estates “by representation” (see, EPTL 1-2.16), had *629 respondent not killed Ray Sr. and had Ray Sr. survived decedent, respondent would not be a distributee of decedent’s estate.
Respondent has not refuted any of the foregoing facts, and, instead, seeks to argue that he was, in fact, insane at the time of the homicides in question. The court flatly rejects any issues respondent raises herein as to his mental state at the time of the homicides, inasmuch as these issues have been fully adjudicated, to wit: a jury of respondent’s peers rejected his insanity defense, the Appellate Division affirmed that determination in all respects, and the Court of Appeals denied him leave to appeal his convictions. In short, since respondent has now exhausted the appellate process, no triable issue exists as to whether the homicides were intentional, or as to his sanity at the time thereof (see, Broer v Smith, 240 AD2d 528; Grayes v DiStasio, 166 AD2d 261).
Accordingly, the only remaining issue is whether respondent should be disqualified as an intestate distributee of decedent’s estate, under Riggs v Palmer (115 NY 506, supra), as a matter of law.
ii. Disqualification — Riggs v Palmer
In Riggs v Palmer (115 NY 506, supra), by will executed in 1880, Francis B. Palmer, a widower (testator), gave small legacies to his two daughters, and his entire residuary estate to his grandson, Elmer Palmer, with a gift over to the daughters if Elmer were to die before reaching the age of majority, unmarried and without issue. The testator’s estate consisted primarily of a farm and considerable personal property.
According to Judge Earl of the Court of Appeals, “that [Elmer] might prevent [the testator] from revoking such provisions, which [the testator] had manifested some intention to do, and to obtain the speedy enjoyment and immediate possession of his property, [Elmer] willfully murdered [the testator] by poisoning him” (Riggs v Palmer, supra, at 508-509).
In finding that, notwithstanding the applicable provisions of the will and foregoing statutes in effect at that time, Elmer had forfeited his right to inherit the property in question, Judge Earl wrote (Riggs v Palmer, 115 NY 506, 511-514, supra):
“[A] 11 laws as well as all contracts may be controlled in their operation and effect by general, fundamental maxims of the common law. No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire *630 property by his own crime. These maxims are dictated by public policy, have their foundation in universal law administered in all civilized countries, and have nowhere been superseded by statutes * * *
“Under the civil law evolved from the general principles of natural law and justice by many generations of jurisconsults, philosophers and statesmen, one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered [citations omitted]. Our revisers and lawmakers were familiar with the civil law, and they did not deem it important to incorporate into our statutes its provisions upon this subject. This is not a casus omissus. It was evidently supposed that the maxims of the common law were sufficient to regulate such a case and that a specific enactment for that purpose was not needed.
“For the same reasons, [Elmer] Palmer cannot take any of this property as an heir. Just before the murder he was not an heir, and it was not certain that he ever would be * * * He made himself an heir by the murder, and he seeks to take property as the fruit of his crime. What has before been said as to him as legatee applies to him with equal force as an heir. He cannot vest himself with title by crime.” (Emphasis supplied.)[3]
The court is mindful of respondent’s argument that the tenets established in Riggs v Palmer (supra) and its progeny have generally been applied only where the killer was seeking a share either as a legatee or distributee of his victim’s estate, and there appears to be no published New York precedent applying said tenets where, as here, the estate from which the killer seeks to inherit is not the estate of his victim.
*631 Nevertheless, in light of all relevant circumstances herein, and in order to uphold the principal maxim derived from Riggs v Palmer (supra) — No one shall be permitted to acquire property by his own crime — this court hereby extends the foregoing principles to the limited circumstances at issue herein.
Indeed, to hold otherwise would subvert the long-standing public policy of the courts in New York, as articulated by Judge Earl (Riggs v Palmer, supra, at 514): “simply * * * that he shall not acquire property by his crime, and thus be rewarded for its commission.” (Emphasis supplied.)[4]
Accordingly, respondent is hereby disqualified as a distribu-tee of decedent’s estate, and his purported share thereof shall pass in intestacy as if he had predeceased decedent.
Upon due payment of all unpaid administration expenses listed in schedule C-l of the account, and three years having passed since decedent’s death, the balance of the estate is to be distributed, in equal shares, to the seven remaining respondents, as decedent’s sole distributees (SCPA 2225; EPTL 4-1.1 [a] [6]).
[Portions of opinion omitted for purposes of publication.]

. By decision and order rendered April 26, 1999, the Appellate Division, Second Department, affirmed respondent’s convictions in all respects (see, People v Macaro, 260 AD2d 648). On August 31, 1999, the Court of Appeals denied respondent’s application for permission to appeal the Appellate Division’s order to the Court of Appeals (see, People v Macaro, 93 NY2d 1022).

. At that time, the court also discharged and compensated respondent’s guardian ad litem, who, in her report, had indicated, inter alla, that petitioner’s application to disinherit respondent was likely to be meritorious, under the progeny of Riggs v Palmer (supra).

. Indeed, the foregoing principles set forth in Riggs v Palmer (supra) both with respect to testate and intestate estates have withstood scrutiny for over a century, and have guided the development of related precedents, to wit: one who has been convicted of an intentional homicide forfeits, without the right to any further hearing: (i) the right to receive the proceeds of insurance policy on the life of the victim (see, e.g., Matter of Barrett, 224 AD2d 415); (ii) sole title to property held jointly with right of survivorship with the victim (see, Matter of Pikul, 192 AD2d 259); and (iii) in essence, the right to receive any property from the victim, regardless of whether the property would have otherwise passed to the killer by will, intestacy, or operation of law (see generally, Estate of Murphy, NYLJ, June 23, 1999, at 31, col 5 [Kings County]; Estate of Mickens, NYLJ, Aug. 8, 1996, at 25, col 1 [Bronx County]).
Notably, such forfeiture does not occur where the killing was accidental, in self-defense (see, Matter of Barrett, supra), or where the killer acted under a disability sufficient to negate a culpable mental state, such as insanity (see, Matter of Wirth, 59 Misc 2d 300).

. The court finds further support for its conclusion herein in the following factors: (i) except for EPTL 4-1.6, which specifically addresses forfeiture of a joint tenant’s interest in a joint bank account, New York, as opposed to numerous other States, continues to lack a comprehensive statute with respect to the principles set forth in Riggs v Palmer (supra) and its progeny (see, Matter of Dorsey, 161 Misc 2d 258; see generally, 5 Scott, Trusts §§ 492494); (ii) since respondent’s purported property interest as a distributee of decedent’s estate did not exist until decedent’s death, and, in fact, existed only because Ray Sr. predeceased him, respondent does not forfeit any vested property interest (see, Civil Rights Law § 79-b); and (iii) since respondent, who is deemed to have predeceased decedent herein for the purpose of intestate distribution of decedent’s estate, has no intestate distributees other than his seven first cousins, no potential distributees of respondent are adversely affected by the foregoing result (compare, Matter of Dorsey, 161 Misc 2d 258, supra).